Josephine McCullough, Appellant, v. H. Schoenstadt and Sons, Inc., Appellee.

Gen. No. 45,547.

 Opinion filed April 1, 1952. Rehearing denied April 14, 1952. Released for publication May 23, 1952.

FLEMING & CUNNINGHAM, of Chicago, for appellant; VINCENT H. O'CONNOR, of Chicago, of counsel.

LORD, BISSELL & KADYK, and REUBEN J. FELDMAN, all of Chicago, for appellees; C. H. G. HEINFELDEN, and LEONARD F. MARTIN, both of Chicago, of counsel.

MR. PRESIDING JUSTICE TUOHY delivered the opinion of the court.

Plaintiff filed her complaint against defendant seeking damages for injuries arising from a fall occurring allegedly as a result of the negligence of defendant's servant. At the close of the evidence offered on behalf of plaintiff the trial court directed the jury to return a verdict for defendant, and from such judgment plaintiff appeals.

The principal contention here is that there was sufficient evidence at the close of the plaintiff's case to make out a prima facie case and, in the absence of any evidence on behalf of defendant, the case should have been submitted to the jury.

Plaintiff, who at the time of the accident was 70 years of age, was employed as a cook by a couple who leased apartment 305 in the Piccadilly Hotel, 5107 Blackstone avenue in the City of Chicago. The hotel building was managed and operated by the defendant. Among the services supplied by defendant to its tenants was maid service. Louise Ramp was the maid employed to wash, clean and dry the floor of the kitchen in apartment 305. On September 8, 1948, she washed the kitchen floor with soap and water. She testified that after she washed the floor she wiped it and then told plaintiff to stay out of the kitchen while it was damp. It appears that some two months before,

2

plaintiff went into the kitchen and had fallen on the floor after it had been washed.

Plaintiff, testifying in her own behalf, when asked what caused her to fall, answered "the wet floor," and when asked to describe that stated: "Well, it seemed like—there was like a pool of soapy water." She stated that she noticed it the minute she went down. She testified that she had fallen on the same damp floor two months before, stating that the floor was not as wet on the former as on the latter occasion. She stated that she did not recall the maid telling her not to go into the kitchen before she fell. She testified that in the fall she sustained a fractured hip which required surgery; that she was on crutches for six or seven months and that she had not returned to work since the accident. She further testified that the kitchen was lighted by an artificial light, that it was burning at the time of the accident, and that it was a very good light. She admitted that she knew that the maid had been in the kitchen prior to the time that she went in there and also admitted that she had been asked the following question and had given the following answer on a deposition taken before trial:

"Did you see that the floor was wet when you first went into the kitchen?

"I didn't observe it just then because I didn't look down. If I had looked down, I suppose I could have avoided the fall, but I didn't."

■ Counsel for plaintiff argues strenuously that by virtue of the testimony "there was like a pool of soapy water on the floor" that a prima facie case of negligence was made out. With that argument we are in accord. However, the record contains certain additional material facts bearing upon the question of contributory negligence which were before the court for its consideration at the time of the motion for a

3

directed verdict. Plaintiff admitted that she knew that the maid was in the apartment and was in the kitchen shortly before the accident. It also appears that the maid's duties in the kitchen consisted of washing or scrubbing the kitchen floor, and in view of all the circumstances the plaintiff was charged with that knowledge. Furthermore, the maid's undisputed testimony is that she went into the living room, after she had finished washing the floor, and acquainted plaintiff with that fact. Plaintiff says that she does not remember such a conversation before the accident but that she has some recollection of such a conversation after the fall. However, she does not deny that the conversation took place and the maid is very positive on that score, and consequently the latter's testimony must be taken as true. It is also undisputed from the evidence that some two months before, the plaintiff had walked into the kitchen when the floor was damp and had fallen. It further is undisputed that shortly after the maid left the apartment and while the floor was still damp plaintiff walked into the kitchen, which she admits was well lighted. She had notice that the floor had been recently scrubbed and had notice of the fact that upon such a floor in the absence of caution she might fall, yet without looking down at the floor she proceeded to walk into the room. She admits that had she looked she would have seen the offending spot and clearly could have avoided the fall. In this state of the evidence it is our opinion that the trial court was justified in directing a verdict holding in effect that plaintiff was guilty of contributory negligence as a matter of law. In the recent case of *Donnelly v. Real Estate Management Corp.*, 342 Ill. App. 453, where a 14-year-old girl, walking along a public sidewalk on a bright, clear afternoon, fell into a basement elevator shaft, the doors of which were open extending approxi-

mately 2½ feet above the level of the concrete sidewalk, we said:

"While the question of contributory negligence is ordinarily one of fact for the jury, when there is no conflict in the evidence and the court can clearly see that the injury was the result of the negligence of the party injured, it should not hesitate to instruct the jury to return a verdict for the defendant. . . .

"The undisputed evidence establishes that the day was clear; that plaintiff's view was unobstructed; that the barrier which she approached extended two and one-half to three feet above the sidewalk; that her eyesight was good; that she was familiar with the street; that she was looking straight ahead. Yet she contends that she did not see the doors or the hatchway. No excuse whatsoever is offered for her failure to observe what was in clear sight. Failure to see what is clearly visible is not, under the authorities, such conduct as is compatible with due caution for one's own safety. *Briske v. Village of Burnham,* 379 Ill. 193; *Dee v. City of Peru,* 343 Ill. 36. The plaintiff here was required to make reasonable use of her faculties, and, under all the admitted facts and circumstances in this case, we must hold that her failure so to do constituted contributory negligence as a matter of law."

Counsel for plaintiff relies upon the case of *Minters v. Mid-City Management Corp.,* 331 Ill. App. 64, in support of their contention that the question of contributory negligence in this case was for the jury. We think the *Minters* case is to be distinguished from the instant case because of the lighting conditions. There was evidence in the former case that the lighting conditions were such that plaintiff, who slipped and fell, was unable to see the floor. As pointed out in the instant case, such was not the situation here.

Counsel has cited a number of Illinois decisions bearing upon the question of contributory negligence

5

to support their contention that there was a question for the jury in the case. These decisions, however, are not persuasive and can all be distinguished on the facts. As was said in the *Minters* case above, each case must be determined from its particular facts; and under all the facts and circumstances in this case we are of the opinion that no error was committed by the trial court in directing a verdict for the defendant. Accordingly, the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

SCHWARTZ and ROBSON, JJ., concur.